**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

FILED
RICHARD W. NAGEL
CLERK OF COURT

2017 MAR -3 PM 12: 02

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST DIV. COLUMBUS

Columbia Gas Transmission, LLC,

        Plaintiff,

        v.

171.54 Acres of Land, More or Less, in
Fairfield, Hocking, Monroe, Morgan,
Muskingum, Noble, Perry, and Vinton
Counties, Ohio, *et al.*,

        Defendants.

Case No. 2:17–cv–70

Judge Michael H. Watson
Magistrate Judge Jolson

## OPINION AND ORDER

Pursuant to the Natural Gas Act, 15 U.S.C. § 717 ("NGA"), Plaintiff

Columbia Gas Transmission, LLC ("Columbia") moves for an order affirming and

authorizing it to condemn all property interests necessary for it to commence

construction of a natural gas pipeline pursuant to a Certificate of Public

Convenience and Necessity issued to Columbia by the Federal Energy

Regulatory Commission ("FERC") on January 19, 2017. Mot. Prelim. Inj., ECF No.

17. Pursuant to Federal Rule of Civil Procedure 65 and this Court's inherent

equitable powers, Columbia further moves for a preliminary injunction,[1] granting it

immediate access to, and use of, those property interests. *Id.* On February 21,

---

[1] Although Columbia's Complaint, ECF No. 1, and Motion for Preliminary Injunction,
ECF No. 17, also move for a temporary restraining order, at hearings before this Court
in connection with this matter, Columbia advised that, as service of process on all
affected parties had been perfected, either personally or by publication, it would seek
only a preliminary injunction after an evidentiary hearing, which this Court conducted on
February 21, 2017.

2017, the Court held a hearing on Plaintiff's Motion for Preliminary Injunction. Order, ECF No. 66; Minute Entry, ECF No. 83. For the following reasons, the Court **GRANTS** Plaintiff's Motion for Preliminary Injunction, ECF No. 17, as set forth below.

## I. FACTS

### A.    Background

Columbia is an interstate natural gas company engaged in transporting natural gas for public consumption. Elaine Coppedge Declaration ("Coppedge Dec.") ¶¶ 5, 6, 8, ECF No. 18-1. On January 19, 2017, in FERC Docket No. CP15-514-000, FERC issued to Columbia a Certificate of Public Convenience and Necessity ("Certificate") approving Columbia's application to construct and operate approximately 160 miles of a 36-inch natural gas pipeline, compression facilities, and related appurtenances in Southeastern Ohio, Southwestern Pennsylvania, and West Virginia's northern panhandle, abandon in-place an approximately 28.2-mile segment of its existing 20-inch R501 pipeline located in Southeastern Ohio and replace that capacity with 27.2 miles of a new larger-diameter pipeline, and construct a related pipeline loop in southern West Virginia designed to facilitate the transportation of natural gas along the integrated pipeline system, which will enable the safe transport of approximately 1.5 billion cubic feet of natural gas from the heart of the Appalachian supply basin to natural gas consumers served by the Columbia Gas Transmission, LLC and Columbia

Gulf pipeline systems ("Project" or "Pipeline"). Coppedge Dec. ¶¶ 7–8, ECF No. 18-1; Compl. ¶¶ 3–6, ECF No. 1; Compl. Ex. A, ECF No. 1-2.

Columbia has testified, without opposition, that the completion of the Project requires its acquisition of pipeline right-of-way easements from impacted landowners along the Project's route. *See* Coppedge Dec. ¶¶ 9–13, ECF No. 18-1. The easements sought are fully described in Columbia's Complaint and supporting exhibits (the "Easements"). *See* Compl., ECF No. 1; Compl. Exs. B-1–B-73, ECF Nos. 1-3, 1-4, 1-5, 1-6, 1-7.

Since 2014, Columbia has expended significant time and resources in its efforts to amicably acquire the property interests necessary for the Project. Coppedge Dec. ¶ 15, ECF No. 18-1. As of February 21, 2017, the date of the preliminary injunction hearing, Columbia represented that it had entered into easement or access agreements with approximately 98% of the affected landowners. The remaining landowners in this action are the impacted surface interest holders who have, despite Columbia's repeated efforts, been unable to agree with Columbia on an appropriate amount of compensation to be paid for their property interests ("Defendant Landowners"). *Id.* ¶ 14.

Under its FERC Certificate, Columbia now seeks immediate access to, and use of, the Defendant Landowners' property interests pursuant to the eminent domain power granted to it by the NGA and this Court's equitable power to grant a preliminary injunction. ECF Nos. 17, 18. Columbia cannot construct the Project in accordance with its FERC Certificate without condemning and making

immediate use of the Defendant Landowners' property interests as set forth in Columbia's Complaint. Coppedge Dec. ¶¶ 9–13, ECF No. 18-1.

In this regard, Columbia's FERC Certificate specifically approves and authorizes Columbia's anticipated completion of the Project by, and its contractually committed in-service date of, November 1, 2017. *Id.* ¶¶ 23, 28. To comply with its FERC-approved construction schedule, Columbia must immediately begin tree-clearing activities and related easement preparations for pipeline installation because Columbia must complete tree-clearing activities by March 31, 2017, in order to satisfy FERC Certificate mandates that Columbia take measures to mitigate and minimize the environmental impact of the Project, as discussed further below. *Id.* ¶¶ 29–30. To meet this deadline, the first in a series of multiple, consecutive Project deadlines, Columbia requires access to, and use of, the subject properties by March 1, 2017, at the very latest, to meet its March 31, 2017 tree-clearing deadline. *Id.* ¶¶ 29–31.

## B.    Procedural History and Remaining Defendants

On January 23, 2017, Columbia filed its Complaint in Condemnation. ECF No. 1. Therein, Columbia named the landowners of the tracts with whom Columbia was unable to reach an amicable agreement, as well as entities that might otherwise have an interest in the properties. In total, Columbia filed suit as to 57 separate tracts of real property, joining 45 Defendant Landowners and 157 potential third-party interest holders ("Third-Party Interest Holders"). *See* Compl., ECF No. 1.

Contemporaneously with the filing of its Complaint, Columbia filed its Motion for Preliminary Injunction, wherein it sought a preliminary injunction allowing immediate access to, and use of, the Easements. ECF Nos. 17, 18. Columbia avers that immediate access to the subject properties is necessary for the timely completion of its tree-clearing activities. Coppedge Dec. ¶¶ 21–34, ECF No. 18-1.

Pursuant to Southern District Local Rule 65.1(a), the Court held a Preliminary Conference on February 13, 2017. ECF Nos. 45, 46. Numerous counsel for various Defendants, both property owners and third-party interest holders, appeared at the Preliminary Conference, after which the Court issued an Order setting a hearing on Columbia's Motion for Preliminary Injunction for February 21, 2017. Order, ECF No. 66.

On February 15, 2017, pursuant to this Court's Order, ECF No. 66, Columbia filed a Memorandum Regarding Acquisition Status, detailing that, since the filing of its Complaint, it had reached an amicable resolution with, and dismissed from the litigation, seven Defendant Landowners across eight tracts of land. Memo. 2, ECF No. 74. Columbia further explained that it had reached, or anticipated reaching, an amicable resolution with multiple additional Defendant Landowners in the short term and that it had reached an access agreement with one Defendant Landowner holding record title to three tracts of land. *Id.* In sum, Columbia reported that, upon finalizing the pending negotiations with specified Defendant Landowners, it would have amicably acquired the necessary property

interests for 96.6% of the 733 total tracts of land in Ohio that are traversed or directly impacted by the Project. *Id.* at 2–3. After filing its Memorandum of Acquisition Status, Columbia dismissed additional Defendant Landowners and Third-Party Interest Holders. *See* ECF Nos. 77 and 80.

The Court held a hearing on Columbia's Motion for Preliminary Injunction on February 21, 2017. Minute Entry, ECF No. 83. As of the date of the hearing, Columbia reported that it had entered additional agreements and stipulations with various defendants, both Defendant Landowners and Third-Party Interest Holders, and that it had by then acquired approximately 98% of the Easements necessary for construction of the Project. *Id. See also* Stipulations, ECF Nos. 81, 82. Columbia has since dismissed additional Defendant Landowners and Third-Party Interest Holders. *See* ECF Nos. 89 and 91.

Thus, as of this date, only certain Defendant Landowners and Third-Party Interest Holders remain in the litigation.[2] Specifically, there are three categories of remaining Defendant Landowners.

The first category is comprised of Defendant Landowners who have been served and filed an answer. These Defendants include: Jeffrey A. Paczewski, ECF No. 75; David L. Smith, ECF Nos. 44, 70; Melissa L. Smith, ECF Nos. 44,

---

[2] As Counsel announced on the record at the February 21, 2017 preliminary injunction hearing, Columbia has reached agreements with multiple additional landowners, for whom dismissals are currently pending. *See also* ECF Nos. 84, 93.

70; Shelly and Sands, Inc., ECF No. 59;[3] and Joseph Lee David Smith, ECF Nos. 44, 70.

The second category is comprised of Defendant Landowners who have been served and filed an appearance but who have not filed an answer, and for whom the time do so has expired. These Defendants include:  Melvin D. Tucker, ECF No. 44; B & N Coal, Inc., ECF No. 50;[4] and Blackhawk Land and Resources, LLC, ECF No. 90.

The third category is comprised of Defendant Landowners who have been served, who have neither appeared nor answered, and whose time to do so has expired. These Defendants include:  D&D Property Two, LLC, ECF No. 51; Donald M. Kirkbride, ECF No. 51; Linda M. Kirkbride, ECF No. 51; Beverly DeCoster, ECF No. 51; Steve Kramer, ECF No. 51; Heritage Coal Company, ECF No. 51; David Craig, ECF No. 51; Deborah Aberegg, ECF No. 51;[5] and Deborah Day, ECF No. 51.

In addition, the Third-Party Interest Holders remaining in this litigation as of March 1, 2017, fall into five categories.

---

[3] On February 20, 2017, Columbia and Shelly and Sands, Inc. filed a Stipulation, stipulating and agreeing that Columbia has the right to condemn and take immediate possession of the Easement across Shelly and Sands, Inc.'s property as described in Columbia's Complaint in Condemnation. ECF No. 81.

[4] On February 20, 2017, Columbia and B & N Coal, Inc. filed a Joint Stipulation, stipulating and agreeing that Columbia has the right to condemn and take immediate possession of the Easements across B & N Coal, Inc.'s properties as described in Columbia's Complaint in Condemnation. ECF No. 82.

[5] Columbia learned of a transfer of Deborah Aberegg's ownership interest in Tract 25 (OH-MO-070.000) and Tract 26 (OH-MO-073.000) to Michael E. Aberegg, Jr. and Sarah Aberegg subsequent to the filing of this Action.  Columbia acquired the necessary Easements from the new Landowners. Memo. 1 n.2, ECF No. 93-1.

The first category is comprised of Third-Party Interest Holders who have been served and filed an answer. These Defendants include:  Ohio Power Company, ECF No. 71; Middlefield Banking Company, ECF No. 86;[6] and Sergeant Stone Inc., ECF Nos. 56, 69.

The second category is comprised of Third-Party Interest Holders who have been served and filed an appearance but have not yet filed an answer. These Defendants include: Gulfport Energy Corporation, ECF Nos. 49, 67; Texas Eastern Transmission, LP, ECF Nos. 42, 60, 67;[7] and Blackhawk Land and Resources, LLC, ECF No. 90.[8]

The third category is comprised of third-party interest holders who have been served, either personally or by publication, who have neither appeared nor answered, and whose time to do so has expired. These Defendants include: Solid Rock Energy, Inc.; Fairfield Federal Savings and Loan Association of Lancaster; Union Savings Bank; Chesapeake Appalachia, LLC; County of Monroe; Switzer Water Association, Inc.; The Ohio Bell Telephone Company; Gary L. Harvey; Portfolio Recovery Associates, LLC; Michael E. Aberegg, Sr.; Bluegrass Pipeline Company, LLC; Citizens National Bank of Woodsfield; East Ohio Gas Company; G-R Contracting, Inc.; Kathryn Chester; County of

[6] Middlefield Banking Company was personally served on January 26, 2017 (ECF No. 51), making its answer due on February 16, 2017. Middlefield Banking Company did not file its answer until February 23, 2017. ECF No. 86.
[7] Gulfport Energy Corporation and Texas Eastern Transmission, LP were granted an extension of time to file an answer until March 13, 2017. ECF No. 67.
[8] Blackhawk Land and Resources, LLC was personally served on January 26, 2017. ECF No. 51, making its answer due on February 16, 2017. Counsel for Blackhawk Land and Resources, LLC did not file his appearance until February 27, 2017. ECF No. 90.

Muskingum; David A. Waldron; Kingston Oil Corporation; Pennzoil-Quaker State Company; Katherine Anderson; Hess Ohio Developments, LLC; Chesapeake Exploration, LLC; Carrizo (Utica) LLC; The Peoples National Bank; Carrie Parker; Michelle Kiener Brooks; Robert Hinkle; County of Perry; Bonna J. Sims; Bonna J. Sims, Successor Trustee of the Revocable Inter Vivos Trust of Amos G. Sims dated November 6, 1992; John D. Mahon; Donna B. Mahon; Elise Rorrer; Mary Ann McGreevy; Mary C. Appleman Chapman; Monica Brothers; Olds Investments, LLC; Patricia A. Smith a/k/a Patty Smith; Robert E. Appleman; Russell Stickney; The Cabin, LLC; The Sunday Creek Coal Company; William Joseph Hillis; Temple Oil & Gas Company; Catherine A. Boyle; Dorothy Hupman; Erik Bennett; James A. Bennett; Margaret E. Davies; Mary Helmers; Pamela Sidewell; Stacy Craig; James Day; Eclipse Resources – Ohio, LLC; Jeanie Enterprises, LLC; Patricia Ann Griego; Rosemary Tague Mackin; Eclipse Resources I, LLC; Gary Rubel; and Jackson County Water Company, Inc.

The fourth category is comprised of third-party interest holders who have been served, either personally or by publication, but who have neither answered nor appeared, and whose time to do so has not yet expired. The service perfection dates for these Defendants fall in the following categories:

a)    Service Perfected by February 8, 2017:  Farm Credit Services of Mid-America.

b)    Service Perfected by February 9, 2017:  Burt Truex; The Heirs of Cyrus Truxall; The Heirs of Harvey M. Berkley; Heirs of Benjamin Stackhouse;

Heirs of Deborah Truex; Heirs of Marjorie L. Bierie; James Ady; John Truex; T.E. Truex; Heirs of Bessie M. Phillips; Heirs of Ethel Phillips; and Heirs of George Rice.

      c)     Service Perfected by February 13, 2017:  Charlotte R. Aspery; Harold R. Aspery; David A. Waldron & Associates, Inc.; Guernsey Petroleum Corporation; The Ohio Fuel Supply Company; H. William Boltres; Heirs of Ruth A. Welsh; Heirs of Edna F. Jones; Heirs of Ernestine L. Lowrey; Heirs of Georgia O. Calhoun; Heirs of Gladys Evelyn Bartimus; Heirs of John Cook; Heirs of Bertha M. Barringer; Heirs of Rolland D. Barringer; Heirs of Kenneth Paul Holcomb; Heirs of Marcella D. Allen; Heirs of Marian L. Stockdale; Heirs of Nelda Maxine Amidon; Joseph L. Kiener; Heirs of Karl Thompson; Peter R. Kiener; Richard Hinkle; Snyder & Swanson, Inc.; Susan Kiener Murray; William C. Kiener; Heirs of Verna E. Forst; Willard Hinkle; Heirs of Mary J. (Storts) Goddard; Heirs of Elma A. McPeek; Heirs of Elma Rosella Adaline Justice; Heirs of Guy P. Shepperd; Heirs of Howard Shepperd; Heirs of John Shepperd; Heirs of Noreen Luebben Henderson; Heirs of R. J. McGonagle; Heirs of W. P. Beaver; The Golden Rule Oil & Gas Company; Heirs of Catherine I. Daugherty a/k/a Irene Marcolina; Heirs of Cletus Appleman; Heirs of James Appleman; Heirs of Leona Appleman; Heirs of Mary Appleman; Heirs of Elizabeth Timberlake; Heirs of Mary Appleman Fletcher; Heirs of Mary M. Daugherty; Sunnyhill Coal Sales Company; John Bennett; Michael D. Bennett; Robert E. Bennett; David P. Tague; Dorothy Tague Racher; Paul Smith; John F. Bentz; and Robert G. Tague.

d)      Service Perfected by February 20, 2017:  Dorothy E. Kidney.

e)      Service Perfected by February 22, 2017:  Barbara Hinkle; Heirs of Freda M. Rigby; Helen J. Appleman f/k/a Helen McGreevy; Barbara I. Anderson; Charles R. Bennett; George Bennett; Mary Evelyn Bennett; Patrick Allen; HCR Holdings, LLC; and James T. Bentz.

The fifth category is comprised of third-party interest holders who have not been served, as further investigation has revealed that they are deceased (or likely are deceased). These Defendants include:  Leona Landerman (Perry County), Don Michael Tucker (Muskingum County), and Daisy Smith (Noble County).[9]  As subsequent investigation revealed that these third-party interest holders are deceased (or likely are deceased), their heirs would hold any third-party interests. As the identities and locations of these individuals are unknown, their heirs should be deemed served by publication as "Unknown Owners" in their respective counties.

At the preliminary injunction hearing, counsel for Defendant Landowner Jeffrey Paczewski, owner of Tract No. 29, asserted, and then withdrew, oral objections to the relief requested by Columbia. No other Defendant Landowner or Third-Party Interest Holder asserted any objections or defenses at the preliminary injunction hearing.

---

[9] Columbia Gas represents that information gleaned by the special process server through service attempts and related diligence caused the process server to conclude that named third-party interest holder Daisy Smith is likely deceased.

## II. DISCUSSION

Columbia moves this Court for an order authorizing it to condemn Defendant Landowners' property interests and for a preliminary injunction allowing immediate possession of those interests. The Court will address each request below.

### A. Whether Columbia Is Authorized to Condemn the Properties

The NGA establishes a comprehensive federal regulatory scheme for the interstate transportation and sale of natural gas. 15 U.S.C. § 717(b). Congress delegated the regulatory authority established by the NGA to FERC. *Alliance Pipeline L.P. v. 4,500 Acres of Land*, 911 F. Supp. 2d 805, 810 (D.N.D. 2012) (citing 42 U.S.C. § 7171). Natural gas companies may undertake the construction or operation of natural gas facilities only if FERC issues to the company a certificate of public convenience and necessity authorizing such conduct. 15 U.S.C. § 717f(c)(1)(A).

Relevant to this action, the NGA permits natural gas companies, through the right of eminent domain, to acquire property rights necessary to facilitate the operation and construction of a natural gas pipeline. 15 U.S.C. § 717f(h). Specifically, a natural gas company may exercise the right of eminent domain to acquire property rights where: (1) the company holds a certificate of public convenience and necessity; (2) the company is unable to acquire the property by contract or is unable to agree with the property owners as to the amount of compensation to be paid; and (3) the use of the property is necessary to comply

with the certificate. 15 U.S.C. § 717f(h). District courts have jurisdiction over cases only where the amount claimed by the property owner exceeds $3,000. *Id*. Satisfaction of these requirements establishes a substantive right to condemnation.

Columbia satisfies each of these requirements. As an initial matter, FERC issued Columbia a Certificate in connection with the Project. Compl. ¶¶ 3–6, ECF No. 1; Compl. Ex. A, ECF No. 1-2; Coppedge Dec. ¶¶ 7–8, ECF No. 18-1. Second, the remaining Defendant Landowners and Columbia have been unable to resolve their disputes by contract or agree on an amount of compensation to be paid for their property interests. Compl. ¶¶ 7, 23, ECF No. 1; Coppedge Dec. ¶¶ 14–20, ECF No. 18-1. Third, Columbia has presented uncontested evidence that the property interests sought in its Complaint, ECF No. 1, and Motion for Preliminary Injunction, ECF No. 17, are necessary to construct the Project in accordance with the Certificate. Compl. ¶¶ 25–29, ECF No. 1; Coppedge Dec. ¶¶ 9–13, ECF No. 18-1. In addition, the Court concludes that it has jurisdiction over this matter because the amounts demanded by the Defendant Landowners each exceed $3,000. Coppedge Dec. ¶ 20, ECF No. 18-1; Compl. ¶ 8, ECF No. 1. Accordingly, Columbia has a substantive right under the NGA to condemn the property interests at issue. *Texas Eastern Transmission, LP v. 3.2 Acres Permanent Easement*, No. 2:14–cv–2650, 2015 WL 152680, at *3 (S.D. Ohio Jan. 12, 2015); *Rockies Express Pipeline, LLC v. 4.859 Acres of Land*, No. 2:08–cv–554, 2008 WL 4758688, at *2 (S.D. Ohio Oct. 27, 2008).

The inquiry does not end here, however. Because Columbia seeks to condemn the property by right of eminent domain, the Court must also examine whether Columbia has complied with Federal Rule of Civil Procedure 71.1, which governs federal proceedings to condemn real and personal property by eminent domain. Fed. R. Civ. P. 71.1(a). Rule 71.1 requires federal eminent domain complaints to contain: (1) a short, plain statement of the authority for the taking; (2) a description of the intended utilization of the property to be taken; (3) a sufficient description to identify the property; (4) a description of the interests to be acquired; and (5) an identification of the defendants who have been joined as owners of each property or property interest. Fed. R. Civ. P. 71.1(c). It further requires Columbia to personally serve upon Defendants a notice of the action properly identifying the interest to be taken, the authority for the taking, the uses for which the property is to be taken, the requirements for answering the complaint, and the consequences of failing to do so. Fed. R. Civ. P. 71.1(c), (d). Columbia may serve by publication any Defendant when Columbia's counsel "files a certificate stating that the attorney believes the defendant cannot be personally served, because after diligent inquiry within the state where the complaint is filed, the defendant's place of residence is still unknown or, if known, that it is beyond the territorial limits of personal service." Fed. R. Civ. P. 71.1(d)(3)(B).

The Court has reviewed Columbia's Complaint, Motion and Memorandum in Support, and other pleadings and documents submitted in connection with this

matter, and holds that Columbia has satisfied the requirements of Rule 71.1.
ECF Nos. 1, 11–16, 17, 18, 19, 35, 37–39, 51, 61–64, 78, 79, 92.

Accordingly, after reviewing the record and evidence submitted in connection with this matter, the Court holds that Columbia has fully satisfied the requirements of the NGA and Rule 71.1, and, therefore, is entitled to condemn all of the property interests at issue and sought by Columbia, and the Court so orders.

**B.    Columbia's Entitlement to Immediate Possession and Use**

Having determined that Columbia has the right to condemn Defendant Landowners' property, the Court, pursuant to Columbia's Motion for Preliminary Injunction, ECF No. 17, must next determine whether Columbia has the right to immediate possession and use of that property.

The Court notes that neither the NGA nor Rule 71.1, in and of themselves, provide for immediate possession or "quick take" authority. However, this Court, in *Texas Eastern Transmission, LP v. 3.2 Acres Permanent Easement*, No. 2:14–cv–2650, 2015 WL 152680 (S.D. Ohio Jan. 12, 2015), citing numerous federal authorities throughout the country, held that, if a plaintiff demonstrates a substantive right to condemn property under the NGA, courts may exercise their inherent equitable power to grant immediate possession through the issuance of a preliminary injunction. *See id.* at *4 (collecting cases).

The question before this Court, therefore, is whether Columbia is entitled to a preliminary injunction granting immediate possession. Because Defendants

have received notice of these proceedings, the Court will address Columbia's

Motion for Preliminary Injunction, ECF No. 17. *See* Fed. R. Civ. P. 65(a)(1).

Federal Rule of Civil Procedure 65 permits the Court to issue preliminary

injunctions upon the satisfaction of certain requirements. The Court considers

four factors in determining whether to grant injunctive relief:

> (1) whether the plaintiff has established a substantial likelihood or
> probability of success on the merits; (2) whether there is a threat of
> irreparable harm to the plaintiff; (3) whether issuance of the
> injunction would cause substantial harm to others; and (4) whether
> the public interest would be served by granting injunctive relief.

*Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010) (quoting *Entm't*

*Prods., Inc. v. Shelby Cnty., Tenn.*, 588 F.3d 372, 377 (6th Cir.2009) (internal

quotation marks omitted)). These four factors are, however, "factors to be

balanced, not prerequisites that must be met. Accordingly, the degree of

likelihood of success required may depend on the strength of the other factors."

*In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985). The Court will

address each factor in turn.

## 1. Probability of Success on the Merits

Columbia's substantive right to condemn the properties at issue

demonstrates a strong likelihood of success on the merits. *Texas E.*

*Transmission, LP*, 2015 WL 152680, at *3; *Rockies Express Pipeline, LLC*, 2008

WL 4758688, at *2.

## 2. Irreparable Harm

Columbia will likely suffer irreparable harm absent immediate possession of the property rights it seeks.

Columbia avers that industry standards dictate linear construction of pipelines to minimize costs and maximize efficiency. Coppedge Dec. ¶¶ 25–26, ECF No. 18-1. In other words, pipelines are constructed in sequential phases, and a delay at one stage necessarily delays the entire project. *Id.* Columbia avers that it will be forced to deviate from its construction schedule to a more compressed timeline and/or to demobilize and remobilize crews to construct the Pipeline in a non-linear fashion should the Court deny its Motion, which will cause Columbia to incur significantly higher costs and Project delay. *Id*. This ostensibly constitutes irreparable harm. *See East Tenn. Natural Gas Co. v. Sage*, 361 F.3d 808, 829 (4th Cir. 2004) ("To require ETNG to build up to a parcel of land [it] do[es] not possess, skip that parcel, and then continue on the other side would prove wasteful and inefficient.") (internal quotation marks and citation omitted).

Because of the wooded nature of most of the route, a significant portion of the Pipeline will traverse protected migratory bird and long-eared bat habitats. Coppedge Dec. ¶ 30, ECF No. 18-1. As a result, the FERC Certificate requires Columbia to conduct all tree-clearing activities before March 31, 2017—the start of nesting season for migratory birds and foraging and breeding season for long-eared bats—and Columbia would not be able to recommence tree-clearing activities until November 1, 2017, the end of such season. *Id.*; Compl., ECF No.

1, Ex. A. Columbia will not be able to complete the necessary tree-clearing before March 31, 2017, if it is not granted immediate access to and use of the Easements by March 1, 2017, without substantially adjusting its FERC-approved construction schedule and jeopardizing, if not eliminating, its ability to complete the Project in accordance with its FERC-approved in-service deadline. Coppedge Dec. ¶¶ 30–31, ECF No. 18-1. Columbia would be unable to recommence preparation and clearing activities until November 1, 2017, which would cause Columbia not only to miss its FERC-approved in-service deadline but also would likely delay the completion of the Pipeline by at least six months. *Id.* at ¶ 30. In other words, without immediate access to and use of the Easements, Columbia will be unable to complete the Project by its FERC-approved in-service deadline, which has also been viewed as irreparable harm. *See, e.g.*, *Texas E.*, 2015 WL 152680, at *5; *S.E. Supply Header, LLC v. 180 Acres in George Cnty., Mississippi*, No. 2:07CV280KS–MTP, 2008 WL 160700, at *3 (S.D. Miss. Jan. 9, 2008) ("Any delay in granting SESH access [to] the Defendants' Property to begin construction activities will impede SESH's ability to provide the needed energy delivery services determined by FERC to be in the best interest of the public.").

Furthermore, the inability to timely complete the Project would not only likely injure Columbia's business reputation and goodwill but would also lead to substantial revenue losses. Coppedge Dec. ¶¶ 34–35, ECF No. 18-1. Columbia's reputation depends upon its ability to timely execute projects and fulfill its existing

contracts, and its credibility in the marketplace is a critical factor in ongoing negotiations for future capital projects. *Id.* at ¶ 34. Courts in the Southern District of Ohio have found that such losses constitute irreparable harm. *See, e.g., Texas E.*, 2015 WL 152680, at *6; *Budget Rent-A-Car Sys., Inc. v. Miles*, No. C2–04–CV–1205, 2006 WL 2373255, at *3 (S.D. Ohio Aug. 14, 2006) ("[A] loss of customer goodwill and reputation can amount to irreparable injury because the damages flowing from such losses are difficult to compute.") (citation omitted). Specifically, under Columbia's firm transportation agreements, if it fails to meet the November 1, 2017 in-service deadline, Columbia would be subjected to significant monthly revenue losses unless and until it both completes the Pipeline and replaces any volume lost as a result. Coppedge Dec. ¶ 35, ECF No. 18-1.

Accordingly, Columbia has established that it will face significant costs and delays unless it is granted immediate access to and use of the Easements. While the Court is typically loathe to find that economic harm amounts to irreparable harm for purposes of granting injunctive relief, the Court finds the evidence sufficient in this case where the remaining factors weigh strongly in favor of granting injunctive relief.  As explained below, Columbia requires immediate access to and use of the Easements to complete the construction of the Project according to its construction schedule, which is designed to meet the FERC-approved deadlines and is tied to its firm transportation agreements, and to ensure that the Project is completed in a manner that is safe, cost efficient, and which will make certain that the public's supply of natural gas is not diminished

during the winter months. *Id.* at ¶¶ 33, 39. For these reasons, Columbia has demonstrated, and the Court finds, that Columbia is likely to suffer irreparable harm without a preliminary injunction granting it immediate access to and use of the Easements.

### 3.    Substantial Harm to Third Parties

Granting Columbia immediate access to and use of the Easements would not cause substantial harm to Third Parties for three reasons: (1) Defendants will receive just compensation for their property interests; (2) contrary to harming the public, it is in the public interest to ensure the Pipeline is completed without delay; and (3) before being granted immediate access to and use of the Easements, Columbia will pay an appropriate bond to the Court to ensure protection of Defendants' interests.[10] *See Texas E.*, 2015 WL 152680, at *7 (citing *Sage*, 361 F.3d at 830 (rejecting the argument that access to and use of the easements before payment of just compensation constitutes an inherent, irreparable harm); *Gulf Crossing Pipeline Co. LLC*, 2008 WL 2774534, at *5 (finding the potential harm to the pipeline company and the public outweighs any harm to the defendant landowners) (collecting cases).  Absent any evidence as to how Defendants or the public will be substantially harmed by immediate possession,

---

[10] As discussed on the record at the February 21, 2017 preliminary injunction hearing, for the Defendant Landowner tracts, Columbia will deposit an amount equal to the last appraised value and will post a bond of 30% of the appraised value, and, as to the remaining tracts, for which Columbia has otherwise secured the necessary property interests to construct the Pipeline, Columbia will post a bond of 30% of the appraised value for the protection of the Third-Party Interest Holders.

the Court finds that this factor weighs in favor or granting relief.

### 4. Public Interest

Granting Columbia immediate possession of Defendants' property interests serves the public interest. FERC has approved the Project, and it is in the public interest to complete it without delay. *See Rockies Express Pipeline, LLC*, 2008 WL 4758688, at *3 (issuing an injunction would "serve the public interest in that it would aid in ensuring that the FERC-approved pipeline deadline is not delayed beyond the already adjusted target date"). "Congress passed the Natural Gas Act and gave gas companies condemnation power to ensure that consumers would have access to an adequate supply of natural gas at reasonable prices." *Sage*, 361 F.3d at 830 (citation omitted). Another federal district court has found that Columbia's pipeline projects in particular "promote[] these congressional goals." *Columbia Gas Transmission LLC v. 0.85 Acres More or Less*, No. WDQ–14–2288, 2014 WL 4471541, at *7 (D. Md. Sept. 8. 2014) (citation omitted) ("FERC has determined that construction of Line MB is in the public interest.").

Here, as in the cases cited *supra*, the Project will enhance Columbia's ability to meet its new and existing service obligations, ensure continued pipeline safety, and promote the efficiency and reliability of transporting natural gas to the public. Coppedge Dec. ¶ 39, ECF No. 18-1. Denying Columbia immediate access to and use of the Easements, on the other hand, "would result in a delay in construction, thus delaying the benefit of a pipeline that improves reliability and

safety. In turn, this would pose a risk of harm to the public." *Columbia Gas Transmission LLC v. 76 Acres More or Less*, No. ELH–14–0110, 2014 WL 2960836, at *16 (D. Md. June 27, 2014). *See also Sage*, 361 F.3d at 826 (recognizing the need for natural gas supply as a "substantial public interest"). For these reasons, Columbia has established that granting it immediate access to and use of the Easements is in the public interest.

In sum, Columbia's probability of success on the merits, the irreparable harm it would suffer absent injunctive relief, and the public interest in timely completion of the Project outweigh any potential harm to Defendants or the public. Accordingly, Columbia is entitled to relief under Rule 65.

### III. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion for Condemnation Order and Preliminary Injunctive Relief for Immediate Access to and Use of Easements, ECF No. 17. The Court specifically orders the following:

**(1)** The Court recognizes and grants Columbia the right to condemn the Easements as defined in Columbia's Complaint in Condemnation, ECF No. 1, as limited by paragraph three below;

**(2)** The Court grants Columbia immediate possession and use of the Easements as to all Tracts as prayed for in Columbia's Complaint, ECF No. 1, as limited by paragraph three below;

**(3)** Notwithstanding the fact that the Complaint, ECF No. 1, identifies all named Defendants, the Court's Order applies only to the remaining Defendant Landowners and the remaining Third-Party Interest Holders;

**(4)** To the extent this Opinion and Order is inconsistent with the stipulations Columbia has entered into with certain Defendants, the terms of those stipulations control;

**(5)** Pursuant to Federal Rules of Civil Procedure 65(c), 67, and 71.1(j)(1), the right to immediate possession and use of the Easements as to each identified Defendant Landowner Tract is contingent upon Columbia first depositing with the Clerk of Court an amount equal to the last appraisal made for each remaining Defendant Landowner Tract, as set forth in the attached Exhibit A;

**(6)** Pursuant to Federal Rules of Civil Procedure 65(c), 67, and 71.1(j)(1), and as an additional prerequisite to immediate possession and use of the Easements as to each identified Defendant Landowner Tract, Columbia shall also post a surety bond in an amount equal to 30% of the last appraisal made, as set forth in Exhibit A. This additional sum will serve as a sufficient security to protect the interests of the third-party interest holders in any damages that may be awarded that exceed the deposited funds;

**(7)** Pursuant to Federal Rules of Civil Procedure 65(c), 67, and 71.1(j)(1), and as an additional prerequisite to immediate possession and use of the

Easements as to each remaining Third-Party Interest Holder Only Tract,[11] Columbia shall post a surety bond in an amount equal to 30% of the last appraisal made, as set forth in Exhibit A. This additional sum will serve as a sufficient security to protect the interests of the third-party interest holders in any damages that may be awarded that exceed the deposited funds;

(8) No party should construe the minimum bond amount as any indication of the floor or ceiling of the ultimate amount of just compensation to which any landowner is entitled, given that the eventual compensation award by this Court, a jury, or a compensation commission may be lower, higher, or the same as this amount;

(9) The bond shall be conditioned on the fact that Columbia shall pay any and all final compensation damages awarded in excess of the deposited amount, and if such payments are made, then the bond shall be null and void upon full payment having been made; and

(10) Pursuant to Federal Rule of Civil Procedure 71.1(j)(2), after Columbia's deposit, the Court and attorneys shall expedite the proceedings so as to distribute the deposit and to determine and to pay compensation. If the compensation finally awarded to a defendant exceeds the amount distributed to that defendant, the Court must enter judgment against Columbia for the deficiency. If the compensation awarded to a defendant is less than the amount

---

[11] Included in this category are the tracts identified as Access Agreements and Sergeant Stone Tracts on page 2 of the attached Exhibit A.

distributed to that defendant, the Court must enter judgment against that

defendant for the overpayment.

      IT IS SO ORDERED.

 

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**

**Defendant Landowner Tracts:**

| Tract Number | Land Owner(s) | Appraised Value Amount | 30% of Appraised Value | Notes |
|---|---|---|---|---|
| Tract No. 7 (OH-HO-245.000) | D&D Property Two, LLC | $10,714.00 | $3,214.20 | |
| Tract No. 8 (OH-HO-248.000) | D&D Property Two, LLC | $0.00 | $0.00 | See OH-HO-245.000 - this tract included in the appraised value. |
| Tract No. 29 (OH-MO-163.000) | Jeffrey A. Paczewski | $5,593.00 | $1,677.90 | |
| Tract No. 39 (OH-NO-012.001) | Donald M. and Linda M. Kirkbride | $2,238.00 | $671.40 | |
| Tract No. 47 (OH-NO-065.000) | Steve Kramer; Beverly DeCoster | $6,817.00 | $2,045.10 | |
| Tract No. 48 (OH-NO-072.000) | Melvin D. Tucker | $6,307.00 | $1,892.10 | |
| Tract No. 49 (OH-NO-075.000) | Melvin D. Tucker | $3,733.00 | $1,119.90 | |
| Tract No. 52 (OH-PE-055.000) | Charles W. and Kathryn E. Owen; Blackhawk Land and Resources, LLC | $224.00 | $67.20 | Charles W. and Kathryn E. Owen have settled and been dismissed from this Action. |
| Tract No. 62 (OH-PE-121.000) | David L. Smith; Melissa L. Smith; Joseph Lee David Smith | $4,021.00 | $1,206.30 | |
| Tract No. 63 (OH-PE-122.000) | David Craig; Deborah Day | $2,830.00 | $849.00 | |

Total Appraised Value: $42,477.00

30% Total Appraised Value: $12,743.10

**Defendant Landowner Tract Dismissed After Filing of Proposed Order on Feburary 22, 2017:**

| Tract Number | Defendant Landowners | Appraised Value Amount | 30% of Appraised Value | Notes |
|---|---|---|---|---|
| Tract No. 4 (OH-HO-156.000) | David Patrick and Laura M. Dalton | $3,704.00 | $1,111.20 | Settled and dismissed from Action; third party interests only remaining. |
| Tract No. 27 (OH-MO-078.001) | Louis Herod Bedford and Donna Jean Pittman Bedford | $9,388.00 | $2,816.40 | Settled and dismissed from Action; third party interests only remaining. |
| Tract No. 28 (OH-MO-103.000) | Koehler Knob Dairy Farm, LLC c/o Debbie S. Koehler, Registered Agent | $5,721.00 | $1,716.30 | Settled and dismissed from Action; third party interests only remaining. |
| Tract No. 46 (OH-NO-060.000) | The Vernon L. Kirkbride Revocable Living Trust Agreement, dated April 14, 1994, c/o Vernon L. Kirkbride, Trustee | $4,545.00 | $1,363.50 | Settled and dismissed from Action; third party interests only remaining. |
| Tract No. 66 (OH-VN-071.000) | Connie Coleman; Bill Barron; Jeri Barron; Terry Barron | $680.00 | $204.00 | Dismissed without Prejudice. |



EXHIBIT A

## Access Agreements and Sergeant Stone Tracts:

| Tract Number | Land Owner(s) | Appraised Value Amount | 30% of Appraised Value | Notes |
|---|---|---|---|---|
| Tract No. 31 (OH-MN-077.000) | Shelly and Sands, Inc. | $261,959.00 | $78,587.70 | |
| Tract No. 32 (OH-MN-082.000) | Shelly and Sands, Inc. | $0.00 | $0.00 | See OH-MN-077.000 - this tract included in the final offer amount and the appraised value. |
| Tract No. 33 (OH-MN-084.000) | Shelly and Sands, Inc. | $0.00 | $0.00 | See OH-MN-077.000 - this tract included in the final offer amount and the appraised value. |
| Tract No. 37 (OH-NO-001.010) | B & N Coal, Inc. | $6,198.00 | $1,859.40 | |
| Tract No. 38 (OH-NO-001.017) | B & N Coal, Inc. | $3,584.00 | $1,075.20 | |
| Tract No. 40 (OH-NO-013.001) | B & N Coal, Inc. | $3,393.00 | $1,017.90 | |
| Tract No. 41 (OH-NO-019.001) | B & N Coal, Inc. | $5,930.00 | $1,779.00 | |
| Tract No. 42 (OH-NO-028.001) | B & N Coal, Inc. | $2,484.00 | $745.20 | |
| Tract No. 43 (OH-NO-037.001) | B & N Coal, Inc. | $7,057.00 | $2,117.10 | |
| Tract No. 44 (OH-NO-050.001) | B & N Coal, Inc. | $0.00 | $0.00 | See OH-NO-037.001 - this tract included in the final offer amount and the appraised value. |
| Tract No. 45 (OH-NO-050.004B) | B & N Coal, Inc. | $204.00 | $61.20 | |
| Tract No. 68 (OH-PE-007.000) | * Sergeant Stone, Inc. | $934,144.00 | $280,243.20 | |
| Tract No. 69 (OH-PE-008.000) | * Sergeant Stone, Inc. | $0.00 | $0.00 | See OH-PE-007.000 - this tract included in the final offer amount and the consulting engineer's estimate. |
| Tract No. 70 (OH-PE-010.000) | * Sergeant Stone, Inc. | $0.00 | $0.00 | See OH-PE-007.000 - this tract included in the final offer amount and the consulting engineer's estimate. |
| Tract No. 71 (OH-PE-013.000) | * Sergeant Stone, Inc. | $0.00 | $0.00 | See OH-PE-007.000 - this tract included in the final offer amount and the consulting engineer's estimate. |
| Tract No. 72 (OH-PE-016.000) | * Sergeant Stone, Inc. | $0.00 | $0.00 | See OH-PE-007.000 - this tract included in the final offer amount and the consulting engineer's estimate. |
| Tract No. 73 (OH-PE-020.000) | * Sergeant Stone, Inc. | $0.00 | $0.00 | See OH-PE-007.000 - this tract included in the final offer amount and the consulting engineer's estimate. |

30% Total Appraised Value: $367,485.90

* Notwithstanding the fact that Columbia successfully acquired the necessary easement interests from the surface owner of these tracts, as Sergeant Stone, Inc. claims to hold an affected possessory interest relative contingent future quarry operations, while Columbia does not necessarily agree with Sergeant Stone's position, it attempted to negotiate the acquisition of the claimed affected interests to no avail.

** Engineering consultant's indication of potential present value of contingent future mining interest as claimed by Sergeant Stone, Inc.

**Remaining Third-Party Interest Holder Only Tracts:**

| Tract Number | Land Owner(s) | Appraised Value Amount | 30% of Appraised Value | Notes |
|---|---|---|---|---|
| Tract No. 1 (OH-FA-010A.000) | Thomas R. and Diane L. Persinger | $5,588.00 | $1,676.40 | |
| Tract No. 2 (OH-FA-022A.000) | Raymond J. North, III, Trustee The North Family Preservation Trust, dated 2/11/2014 | $9,926.00 | $2,977.80 | |
| Tract No. 4 (OH-HO-156.000) | David Patrick and Laura M. Dalton | $3,704.00 | $1,111.20 | Settled and dismissed from Action; third party interests only remaining. |
| Tract No. 21 (OH-MO-033.000) | The Sandra A. Dietrich Trust Agreement dated January 11, 1999 c/o Paul E. Dietrich and Sandra A. Dietrich, Trustees | $6,783.00 | $2,034.90 | |
| Tract No. 22 (OH-MO-068.001) | Daniel P. and Carrie M. Dick | $42.00 | $12.60 | |
| Tract No. 23 (OH-MO-069.000) | Michael E. Aberegg, Sr. | $3,240.00 | $972.00 | |
| Tract No. 24 (OH-MO-069.001) | Daniel P. and Carrie M. Dick | $441.00 | $132.30 | |
| Tract No. 25 (OH-MO-070.000) | Deborah Aberegg*** | $2,913.00 | $873.90 | |
| Tract No. 26 (OH-MO-073.000) | Deborah Aberegg*** | $5,586.00 | $1,675.80 | |
| Tract No. 27 (OH-MO-078.001) | Louis Herod Bedford and Donna Jean Pittman Bedford | $9,388.00 | $2,816.40 | Settled and dismissed from Action; third party interests only remaining. |
| Tract No. 28 (OH-MO-103.000) | Koehler Knob Dairy Farm, LLC c/o Debbie S. Koehler, Registered Agent | $5,721.00 | $1,716.30 | Settled and dismissed from Action; third party interests only remaining. |
| Tract No. 30 (OH-MO-215.001) | Gary A. and Nancy S. Rubel | $2,038.00 | $611.40 | |
| Tract No. 34 (OH-MU-023.000) | Five Starr Farms, LLC c/o David L. Starr, Registered Agent | $34,959.00 | $10,487.70 | |
| Tract No. 35 (OH-MU-031.000) | Five Starr Farms, LLC c/o David L. Starr, Registered Agent | $7.00 | $2.10 | |
| Tract No. 36 (OH-MU-032.000) | Five Starr Farms, LLC c/o David L. Starr, Registered Agent | $11,591.00 | $3,477.30 | |
| Tract No. 46 (OH-NO-060.000) | The Vernon L. Kirkbride Revocable Living Trust Agreement, dated April 14, 1994, c/o Vernon L. ... | $4,545.00 | $1,363.50 | Settled and dismissed from Action; third party interests only remaining. |
| Tract No. 50 (OH-PE-048.000) | Martin A. and Barbara J. Hutchins | $4,386.00 | $1,315.80 | |

| Tract | Owner | Offer Amount | 30% Appraised Value | Notes |
|---|---|---|---|---|
| Tract No. 51 (OH-PE-048A.000) | Martin A. and Barbara J. Hutchins | $17,358.00 | $5,207.40 | |
| Tract No. 53 (OH-PE-088.000) | Charles W. and Kathryn E. Owen | $1,577.00 | $473.10 | |
| Tract No. 54 (OH-PE-088A.000) | Tri-State Reclamation, Ltd. | $0.00 | $0.00 | See OH-PE-090.000 – this tract included in the final offer amount and the appraised value. |
| Tract No. 55 (OH-PE-090.000) | Tri-State Reclamation, Ltd. | $2,814.00 | $844.20 | |
| Tract No. 56 (OH-PE-095.000) | Charles W. and Kathryn E. Owen | $2,266.00 | $679.80 | |
| Tract No. 57 (OH-PE-099.000) | Tri-State Reclamation, Ltd. | $7,105.00 | $2,131.50 | |
| Tract No. 58 (OH-PE-101.000) | Charles W. and Kathryn E. Owen | $4,789.00 | $1,436.70 | |
| Tract No. 59 (OH-PE-106.000) | Charles W. and Kathryn E. Owen | $2,409.00 | $722.70 | |
| Tract No. 60 (OH-PE-112.000) | David Scott Owen | $105.00 | $31.50 | |
| Tract No. 61 (OH-PE-113.000) | Mark J. Howdyshell, Trustee of Trust #300 | $5,550.00 | $1,665.00 | |
| Tract No. 64 (OH-PE-193.000) | Melia Flowers | $3,986.00 | $1,195.80 | |

**30% Total Appraised Value:**
$47,645.10

**30% Grand Total Appraised Value:**
$427,874.10

*** Columbia learned of a transfer Deborah Alverega's ownership interest in Tract 25 (OH-MO-070.000) and Tract 26 (OH-MO-073.000) to Michael E. Alverega, Jr. and Sarah Alverega subsequent to the filing of this Action. Columbia acquired the necessary Easements from the new Landowners.