UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| COLUMBIA GAS TRANSMISSION, LLC, | : | |
| Plaintiff, | : | Case No.: 2:17-cv-70 |
| v. | : | JUDGE MICHAEL H. WATSON |
| 171.54 ACRES OF LAND, more or less, in Fairfield, Hocking, Monroe, Morgan, Muskingum, Noble, Perry, and Vinton, *et al.*, | : | Magistrate Judge Elizabeth Preston Deavers |
| Defendants. | : | |

**REPORT AND RECOMMENDATION OF THE COMMISSION REGARDING PROPERTY OWNDED BY B&N COAL, INC.**

The captioned case includes a compensation dispute between Columbia Gas Transmission, LLC ("Columbia Gas") and B&N Coal, Inc. ("B&N"). Pursuant to Orders issued by Judge Watson (Opinion & Order, ECF No. 212; Order on Objections & Final Instructions to Commissioners, ECF No. 222), the dispute came on for a hearing before the Commission on November 21, 2019. (Hrg. Tr., ECF No. 239-1.) At the conclusion of the hearing, the Commission took the matter under advisement.[1] In accordance with Federal Rule of Civil Procedure 71.1 and Judge Watson's instructions, the Commission now issue its Report and Recommendation regarding the amount of compensation, if any, due to B&N.

**Standard Involved**

As Judge Watson explained in his August 15, 2019 Order, "[t]he Commission acts as an assessing body in determining the amount of compensation and the amount of any damages to the residue, if any, payable by Columbia Gas by reason of each taking." Order on Objections & Final

---

[1] Pursuant to Judge Watson's instructions, Commissioner Craig Paynter also attended the hearing as a designated alternate. (Order on Objections & Final Instructions to Commissioners, ECF No. 222 at PageID 2658-2659, 2660.) As the alternate, Commissioner Paynter took no part in the deliberations or in the writing of this Report and Recommendation. (*Id.*)

Instructions to Commissioners, ECF No. 222 at PageID 2654. In fulfilling its duties, the Commission is bound by the Court's instructions. *See* Order on Objections & Final Instructions to Commissioners, ECF No. 222. This includes all relevant instructions, with no one instruction to be afforded paramount importance. Accordingly, in conducting its deliberations, the Commission adhered to the instructions provided by the Court.

## Discussion

B&N owns approximately 532 acres that are at issue in this lawsuit, with eight tracts involved. Five of the tracts are contiguous to each other and comprise just over 262 acres (tracts 38, 42, 43, 44, and 45). The remaining three tracts are contiguous to each other and comprise just over 270 acres (tracts 37, 40, and 41). Neither party requested a property view by the Commission, and no such view was held.

In order to operate and maintain a natural gas pipeline, Columbia Gas has acquired an easement in this partial taking case. It is settled that "[t]he date of the take is January 23, 2017." Order on Objections & Final Instructions to Commissioners, ECF No. 222 at PageID 2672.

A just compensation determination involves ascertaining the difference, if any, between the fair market value of B&N's subject property before the take and the value of the subject property after the take. Any decrease from the pre-taking value to the post-taking value is the just compensation due B&N. *See id.* at 2672-2673, 2676. As the landowner, B&N may also be entitled to any damages to the residue. *See id.* at 2676. Finally, in addition to the permanent easement involved here, there is a temporary easement obtained for the purpose of constructing the natural gas pipeline. *See id.* at 2678. Pursuant to the Commission instructions, "[t]he measure of compensation for a temporary taking is the fair market value of the loss of use of the property taken. That fair market value is the fair rental value." *Id.* Stated otherwise, "[f]air market value is the amount of money that could be obtained on the market at a voluntary sale of the estate for

purposes of obtaining a permanent easement." *See id.* at 2674-2675.

Both sides presented testimony on just compensation. The Commission begins with the testimony of Columbia Gas' expert, attorney and real estate appraiser G. Franklin Hinkle, II. Pursuant to the Commission instructions, "[w]ith regard to expert opinion concerning the property affected in an appropriation proceeding, it is well settled that a qualified witness must give his opinion as to the value of the entire property before the taking and as to the value of the remainder of the property after the taking." Order on Objections & Final Instructions to Commissioners, ECF No. 222 at PageID 2678. Hinkle met this standard.

Echoing his expert report, Hinkle testified that the five-tract parcel is "about 262.7 acres" and "is essentially vacant land. It was coal land. It's got strip mine portions. It looks like it's mostly used for recreational-type land similar to most land in that area." Hrg. Tr., ECF No. 239-1 at PageID 3875-3876, 3878. In determining highest and best use, Hinkle employed a four-prong analysis. First, he reviewed the parcel's zoning to ascertain what is legally permissible and concluded that there is no zoning in place within the relevant township. Hrg. Tr., ECF No. 239-1 at PageID 3878; Ex. P-1 at 34. Second, he considered what is physically possible and concluded that "there are no known major physical restrictions which would appear to prevent the subject site from being developed with a rural use in conformance with area trends." Ex. P-1 at 34; Hrg. Tr., ECF No. 239-1 at PageID 3878. Third, he reviewed what would be financially feasible for the property. Hrg. Tr., ECF No. 239-1 at PageID 3878; Ex. P-1 at 35. Fourth, he determined what result would maximize the use of the property. Hrg. Tr., ECF No. 239-1 at PageID 3878; Ex. P-1 at 35. All of this led Hinkle to conclude that "[t]he highest and best use of the subject property as 'vacant and available' is for rural residential, agricultural and/or rural recreational oriented purposes." Ex. P-1 at 35; Hrg. Tr., ECF No. 239-1 at PageID 3879. Stated even more simply, the expert testimony was that the highest and best use of the five-tract parcel is its current use. Hrg.

Tr., ECF No. 239-1 at PageID 3879.

Hinkle then testified that the best indication of value would be a sales comparison. *See id.* at 3876. Judge Watson has instructed the Commission that "[b]ona fide sales of comparable properties, made within a reasonable time before the date of taking of the property involved may be the best obtainable evidence of market value at the time of taking." Order on Objections & Final Instructions to Commissioners, ECF No. 222 at PageID 2684. Similarly, Hinkle's expert report explains that the sales comparison approach "is the best approach for valuing vacant land properties such as the subject [site] and there is a sufficient amount of market land sales available from which a reliable market value estimate could be derived." Ex. P-1 at 36. Hinkle explained the analysis involved:

> We look to the market to see what properties that have similar traits as the subject property are trading for. We look to see what the local market, regional market, we look to see what properties have similar traits, strip mine properties, mined properties, properties with road frontage, undulation, do they have utilities. Then we look to the market to see what those command in value.

Hrg. Tr., ECF No. 239-1 at PageID 3880-3881. Summarized generally, the analysis involves comparing prices paid for similar sites in recent times. *See* Ex. P-1 at 37.

Additional testimony indicated that Hinkle used fifteen comparable sales in his analysis. Hrg. Tr., ECF No. 239-1 at PageID 3882; Ex. P-1 at 38 (Comparable Sales Chart). The sales used "were deemed to be recent and had a similar or comparable highest and best use of the subject property, were deemed to be arm's length sales and used as a basis for value." Hrg. Tr., ECF No. 239-1 at PageID 3882. Hinkle testified that his analysis produced a market value of $1,750 per acre. *See* Hrg. Tr., ECF No. 239-1 at PageID 3884; Ex. P-1 at 39. This means that the five-tract parcel had a pre-taking worth of approximately $459,512. *See* Hrg. Tr., ECF No. 239-1 at PageID 3885; Ex. P-1 at 39, 40.

Hinkle also testified as to the easements involved. Five permanent easements exist

4

constituting a take of 6.11 acres. Hrg. Tr., ECF No. 239-1 at PageID 3885-3886; Ex. P-1 at 41. 6.10 acres of this are permanent taking acres, while 0.010 is a permanent access easement. Hrg. Tr., ECF No. 239-1 at PageID 3892; Ex. P-1 at 48. In addition, there were eight temporary easements constituting a take of 7.98 acres. Hrg. Tr., ECF No. 239-1 at PageID 3886; Ex. P-1 at 41. It is well settled that "[t]he measure of compensation for a temporary taking is the fair market value of the loss of use of the property taken" and "[t]hat fair market value is the fair rental value." Order on Objections & Final Instructions to Commissioners, ECF No. 222 at PageID 2678. Hinkle tracked this approach. He applied a 10% rate of return—the mid-point of the 5% to 15% range about which he testified—to the two-year duration of the temporary period, to arrive at compensation of $2,793 for the temporary easement. Hrg. Tr., ECF No. 239-1 at PageID 3894; Ex. P-1 at 55.

In regard to damages to the residue, Hinkle testified that he "was unable to find any market evidence that the property would suffer damage as a result of the taking." Hrg. Tr., ECF No. 239-1 at PageID 3891. This tracked his expert report. Ex. P-1 at 54.

Finally, in coming to his conclusion as to the diminution to the market value of the encumbered property, Hinkle testified that he compensated 95 percent of the fee simple value for the easement area. Hrg. Tr., ECF No. 239-1 at PageID 3891-3892. This exceeded the standard range applied in such valuation by at least 20%. Hrg. Tr., ECF No. 239-1 at PageID 3891; Ex. P-1 at 52. The 95% of the fee simple value ($1,750 per acre) multiplied by the 6.10-acre permanent taking equals $10,141, which, when added with $17 (constituting 95% of the fee simple value of the 0.010 acre permanent access easement), produces an end figure of $10,158 for the total market value for the acquired easements. Hrg. Tr., ECF No. 239-1 at PageID 3892; Ex. P-1 at 54-55.

Starting with the pre-take market value of the property of $459,512 and subtracting the $10,158 diminution in market value of the permanent easement area leaves a post-taking market

5

value of the property of $449,354. Hrg. Tr., ECF No. 239-1 at PageID 3895; Ex. P-1 at 56. There were no improvements made to the land and no damage to the residue. Thus, the only remaining calculation is to add the fair market value, or fair rental value, of the temporary easement, which as noted above is $2,793. Thus, Hinkle's testimony and expert report presented a total compensation award for the five-tract parcel of $12,951. Hrg. Tr., ECF No. 239-1 at PageID 3897; Ex. P-1 at 58.

Hinkle employed the same core analysis in regard to the three-tract parcel. Using the same analytic chain described above, he testified that the estimated pre-taking market value of the three-tract parcel was $473,356. Hrg. Tr., ECF No. 239-1 at PageID 3902; Ex. P-2 at 38, 39.

Three permanent easements exist constituting a take of 7.2 acres. Hrg. Tr., ECF No. 239-1 at PageID 3885-3886; Ex. P-2 at 40. Applying the formula discussed above to the foregoing numbers (7.2 acres x $1,750/acre x 95%) produces a market value for the acquired easements of $11,970. Ex. P-2 at 50.

In addition, there were eight temporary easements constituting a take of 10.15 acres. Hrg. Tr., ECF No. 239-1 at PageID 3886; Ex. P-2 at 50. Hinkle applied a 10% rate of return—again, the mid-point of the 5% to 15% range about which he testified—to the two-year duration of the temporary period, to arrive at compensation of $3,553 for the temporary easement. Hrg. Tr., ECF No. 239-1 at PageID 3894; Ex. P-2 at 50.

Hinkle again found no damage to the residue. Ex. P-2 at 49.

The foregoing analysis and calculations indicate an estimated pre-taking market value of $473,356 for the three-tract parcel, with an estimated post-taking market value of the property of $461,386. Ex. P-2 at 51, 52. This presents a difference of $11,970 constituting diminution in market value of the permanent easement area. Ex. P-2 at 53. There were no improvements made to the land and again no damage to the residue. Ex. P-2 at 53. Hinkle opined that the fair market

value, or fair rental value, of the temporary easement was $3,553. Ex. P-2 at 53. Thus, Hinkle presented a total compensation award for the three-tract parcel of $15,523 ($11,970 + $3,553). Ex. P-2 at 53; Hrg. Tr., ECF No. 239-1 at PageID 3903.

The Commission credits Hinkle's testimony and the evidence upon which he relied to calculate the amounts discussed. In so doing, the Commission is cognizant that no Commissioner is duty-bound to accept Hinkle's opinion. In light of Hinkle's background and experience, generally accepted appraising methodology, and how Hinkle reached his conclusions, however, the undersigned members of the Commission found Hinkle to be a credible, informed, and thoughtful witness. The Commission found his core factual contentions, noted throughout the above discussion, to be credible and adopts them as the findings of the Commission.

Added together, the foregoing findings and associated amounts for each parcel equal the following:

| | |
|---|---|
| Compensation Due B&N on Five-Tract Parcel | $12,951 |
| *(Market Value Taken $10,158 + Damage $0 + Temporary Easement $2,793)* | |
| Compensation Due B&N on Three-Tract Parcel | $15,523 |
| *(Market Value Taken $11,970 + Damage $0 + Temporary Easement $3,553)* | |
| **Total Compensation Due B&N** | **$28,474** |

In reaching its recommendation, the Commission considered the testimony of each witness and all of the exhibits admitted into evidence. The evidence before the Commission was largely presented by Columbia Gas. The lack of opposing evidence was due to the Commission Chair's

exclusion of testimony and evidence based on evidentiary decisions outside the scope of the full Commission. The focus of B&N's case and cross-examination of Hinkle was a critique of the methodology he used, which focused on the before-and-after values of the larger parcel *(i.e.*, any decrease in value after easements) compared to use of an easement-focused methodology that relied on excluded comparables that involved a linear-foot basis. B&N offered little evidence concerning the fair market value of the properties involved or to contradict the analysis Hinkle employed.

### **Recommendation**

The task before the Commission is to recommend the just compensation due B&N for what value B&N has lost. Based on the foregoing findings and discussion, it is the unanimous recommendation of the Commission that the Court order Columbia Gas to compensate B&N in the amount of $28,474.

The parties involved in this compensation dispute are reminded that each party may file specific and detailed objections to—or a motion to adopt or modify—the Commission's Report and Recommendation no later than fourteen days after service of the Report and Recommendation. *See* Order on Objections & Final Instructions to Commissioners, ECF No. 222 at PageID 2657.

**IT IS SO ORDERED.**

/s/ *Shawn Judge*
Shawn Judge (0069493)
Commission Chair


/s/ *Keith Schneider*
Keith Schneider (0041616)
Commissioner


/s/ *Cathy Christian*
Cathy Christian
Commissioner

CONCURRENCE by Shawn Judge, Commission Chair.

I concur in all respects with the Commission's Report and Recommendation and write separately to address two adjacent issues that relate to my role as Commission Chair. Accordingly, the substance of this Concurrence is attributable only to me and not to the other members of the Commission.

The first issue warranting mention is the evidentiary decision I made that affected the testimony and other evidence that came before the Commission at the compensation hearing. Prior to the hearing, the parties completed briefing on multiple motions *in limine* targeting potential hearing evidence. One such motion sought to preclude B&N from introducing testimony from B&N's owner and president, Carl Baker, Jr., that employed a lineal-foot going rate calculation to provide a valuation opinion. I granted the motion *in limine* on the grounds that although a property owner can render an opinion on fair market value of his or her property, Judge Watson's instruction to the Commission prohibited substituting lineal feet measurements for fair market value. *See* Order on Objections and Final Instruction to Commissioners, ECF No. 222, at PageID 2687 (Instruction 50). But to the extent that Baker could testify at the hearing without using the prohibited approach, he was permitted to do so.

At the hearing, I rejected an oral motion for reconsideration of the *in limine* decision after entertaining argument from the parties. *See* Hrg. Tr., ECF No. 239-1 at PageID 3767-3787. I then rejected B&N's motion for reconsideration of my decision on the first oral motion for reconsideration. *See id.* at 3788-3789. Consistent with these decisions, I later excluded Baker's valuation testimony because he relied upon a price per linear foot approach and tainted comparables negotiated with other pipeline companies. The three comparables upon which he based his opinion were deemed tainted because they relied on per-linear-foot agreements. My rationale, correct or incorrect, is set forth in the hearing transcript and need not be presented in

9

more than summary form here.  *See id.* at 3828-3830, 3833.

I mention the evidentiary issue because it informs the second issue prompting this Concurrence: the delay that has accompanied this Report and Recommendation.  The Columbia Gas/B&N dispute presented what is likely to be an atypical issue; given the clarity of Judge Watson's instructions to the Commission and the underlying case law upon which those instructions are based, I suspect few landowners will rely on lineal-foot calculations either expressly or by way of backdoor comparables asking the Commission to consider a number (without considering the underlying basis for the number and the resultant taint on the transaction).

Hoping to offset any counsel treating this first Commission Report and Recommendation as the model template for future hearings or an invitation for pre-hearing evidentiary battles—*i.e.*, inviting motions *in limine* and attempts to prevail by wholesale exclusion of evidence, which will rarely occur—I elected to hold this Report and Recommendation until additional hearings and additional decisions were on the horizon.  My thought was that drawing the wrong conclusion from this recommendation would be tempered by its atypical context and by it being one of by-then many recommendations released.  Then the 2020-2021 pandemic hit, hearings were canceled, schedules collapsed, and this Report and Recommendation slid later and later.  The error in timing is mine, not that of any other member of the Commission.  Future Reports and Recommendations will not be hindered by such delay.

    /s/ *Shawn Judge*
    Shawn Judge (0069493)
    Commission Chair