UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Columbia Gas Transmission, LLC,

    Plaintiff,

    v.

171.54 Acres of land, more or less, in Fairfield, Hocking, Monroe, Morgan, Muskingum, Noble, Perry, and Vinton, *et al.*,

    Defendants.

Case No. 2:17-cv-70

Judge Michael H. Watson

Magistrate Judge Deavers

## OPINION AND ORDER

The Court appointed a Commission under Federal Rule of Civil Procedure 71.1(h)(2) to determine the just compensation due to Defendant Sergeant Stone Inc. ("SSI") for impacts of the pipeline on mineral interests SSI holds.[1] *See generally* ECF Nos. 193 & 212. The Commission issued a Report and Recommendation ("R&R"), recommending the Court order Columbia Gas Transmission, LLC ("Columbia Gas") to compensate SSI in the amount of $0.00 for the residue at issue. R&R 28, ECF No. 342.

Columbia Gas moves to adopt the R&R, ECF No. 343, and SSI has responded, ECF No. 345. SSI objects to the R&R on a number of grounds, ECF

---

[1] As is required when the Court appoints a Commission to determine just compensation awards, the Court issued final instructions to govern the proceedings of the Commission. *See* Insts., ECF No. 222; *see also United States v. Merz*, 376 U.S. 192, 198–99 (1964).

No. 344, and Columbia Gas has responded to SSI's objections, ECF No. 346. For the following reasons, the Court **OVERRULES** SSI's objections and **ADOPTS** the R&R.

## I. BACKGROUND

Columbia Gas acquired an easement over the relevant parcels of land to construct and operate a natural gas pipeline (the "Pipeline"). "[T]he date of the take is January 23, 2017." Inst. 24, ECF No. 222 at PAGEID # 2672.

At the time of the take, SSI held mining leasehold interests over approximately 1,000 acres of land in Perry County, Ohio. Resp. 8, ECF No. 345; Tr. 13:19–22, ECF No. 321-1; Objs. 2, ECF No. 344. SSI had a mining permit to mine limestone covering a southeastern portion of the leased area (which is not a portion the Pipeline now traverses), and began mining limestone on the permitted area in 2014. See Tr. 36:2–6, 69: 3–5, ECF No. 321-1; see also Objs. 2, ECF No. 344. At the time of the take, SSI was operating a limestone mine. Tr. 36:9–11, ECF No. 321-1. The Pipeline did not disrupt SSI's then-existing mining operation, but SSI alleges it had plans to mine future portions of the leased area, including the area now traversed by the Pipeline. R&R 2, ECF No. 342. Accordingly, SSI seeks damages caused by the Pipeline. *Id.*

The Commission held a hearing to determine what compensation Columbia Gas owed SSI for the taking's effect on the residue. Prior to the hearing, SSI moved to exclude the testimony of Dr. Catherine Aimone-Martin

("Aimone-Martin"), Columbia Gas's blasting expert, and to exclude the testimony of Jan Hutwelker ("Hutwelker"), Columbia Gas's valuation expert. *See generally*, Mots., ECF Nos. 250 & 253. The Commission denied SSI's motions. Orders, ECF Nos. 303 & 304.

At the hearing, SSI presented expert testimony that it could not blast within 550-feet on either side of the pipeline (the "setback"), R&R 5, ECF No. 342, and that the value of the limestone impeded by the Pipeline is $4,082,662, *id.* at 10. Columbia Gas presented evidence, in the form of Hutwelker's testimony, that any unminable limestone has no value because, in Hutwelker's opinion, by the time mining would reach the impeded limestone, the mining operation will not be economically viable. *Id.* at 17–18.

The Commission found the testimony of Columbia Gas's experts more credible but ultimately was not persuaded by either side. *Id.* at 21–27. Lacking persuasive evidence on the safe blasting distance, amount of limestone impeded, and value of that limestone, the Commission concluded that SSI failed to prove special damages. *Id.* at 27–28. Because SSI failed to meet its burden of proof, the Commission recommended awarding SSI $0.00 in compensation. R&R 28, ECF No. 342.

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 71.1(h)(2)(D), the Commission has the powers of a special master under Federal Rule of Civil Procedure 53(c).

In drafting an R&R, the Commissioners must "reveal the reasoning they use in deciding on a particular award, what standard they try to follow, which line of testimony they adopt, what measure of severance damages they use, and so on." Inst. 8, ECF No. 222.

"In acting on [the Commission's R&R], the court must give the parties notice and an opportunity to be heard; may receive evidence; and may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the [Commission] with instructions." Fed. R. Civ. Pro. 53(f)(1). The Court gave the parties fourteen days to object to the R&R. Insts. 9, ECF No. 222. The Court reviews *de novo* all objections to the Commission's findings of fact and conclusions of law. Fed. R. Civ. Pro. 53(f)(3)–(4).

### III. ANALYSIS

As described above, this case involves a just compensation determination for damage to the residue, separate from the land, due to the holder of mineral interests. "The 'residue' is the estate that is not being taken but that may be affected after the take occurs" and includes "underlying minerals[.]" Insts. 24–25, ECF No. 222 (citations omitted). "'Damages' are the loss in value to the residue of the estate because of the taking." *Id.* at 26. "Mineral interests may be valued separately [from the land] if those interests are capable of reasonably precise calculation." *Id.* at 32. Although lost future profits are generally not compensable, the income capitalization method may be used to calculate

damages to mineral interests when future profits from the mining and marketing of mineral deposits are capable of reasonably precise calculation. *Id.* at 4, 34.

SSI has the burden of proving (1) the existence of residue and (2) the existence of special damages to that residue, both by the greater weight of evidence. *Id.* at 25, 29 (citations omitted).

SSI makes a number of objections to the R&R, which the Court addresses below.

### A. Existence of Residue

SSI makes several objections that go to the Commission's findings (or lack thereof) with respect to the existence of the residue. SSI objects to the following: (1) the conclusion that Jan Hutwelker ("Hutwelker"), Columbia Gas's valuation expert, called into question SSI's ability to get a mining permit, Obj. 22–23, ECF No. 344; (2) the finding that SSI's blasting expert, Dr. Anthony Konya ("Konya"),[2] used a methodology that is not widely accepted in the scientific community and that his opinions were otherwise not as reliable as Dr. Catherine Aimone-Martin's, *id.* at 5–14; and (3) the Commission's admission of evidence of prior negotiations and settlements, which SSI argues caused the Commission to "latch onto" a 175-foot setback.[3] *Id.* at 24–27.

---

[2] Dr. Calvin J. Konya was designated as SSI's blasting expert in this case, prepared an expert report, and sat for a deposition. *See generally*, Order, ECF No. 299. However, Dr. Calvin J. Konya passed away prior to the hearing, and the Commission allowed his son, Dr. Anthony Konya, to testify on his father's report, in his place. *Id.*

[3] Even if this constitutes evidence of prior settlement offers or negotiations under Federal Rule of Evidence 408, SSI mischaracterizes the Commission's findings. Rather

The Court need not address these objections because regardless of whether SSI has proven the *existence* of residue, SSI has failed to prove special damages capable of reasonably precise calculation. In other words, even if these objections were meritorious, the Court would still find SSI has failed to prove its case. Accordingly, SSI's objections with respect to the existence of residue are **OVERRULED AS MOOT.**

The Court now turns to a more fulsome discussion of SSI's objections to the Commission's valuation findings.

**B.     Valuation Objections**

SSI objects to the Commission's finding that its valuation expert, Ronald Lewis ("Lewis") did not use reliable data and objects to the Commission's consideration of Hutwelker's testimony. Objs. 14–22, ECF No. 344. The Court begins with SSI's arguments concerning the admissibility of Hutwelker's testimony.[4]

---

than accepting a 175-foot blasting corridor, the Commission found that, on the evidence presented, it was unable to determine the setback. See R&R 23, ECF No. 342 ("Based on the evidence, the Commission could do little more than guess what a proper blasting corridor would be under the circumstances present here."). This objection is therefore moot for this reason as well.

[4] The Court addresses SSI's admissibility objections because if the Court were to find the Commission erred in admitting Hutwelkers' testimony, it would be appropriate to consider resubmitting this matter to the Commission with instructions to exclude such evidence.

Case No. 2:17-cv-70                                                                                                          Page 6 of 11

### 1. Admissibility of Hutwelker's Testimony

First, SSI argues that Hutwelker's testimony should have been excluded because his initial report ("June Report") did not include a "before and after the take" analysis. Objs. 20–21, ECF No. 344.

The Court sees no meaningful difference between the methodology used by Lewis and that used by Hutwelker. Lewis's report separately calculates the net present value of the tons of limestone pre-pipeline and post-pipeline, over the mine life, with the difference being the impeded limestone's value, $4,082,662 ("Lewis Report"). *See generally*, Lewis Report, ECF No. 253-1. The June Report on the other hand, starts by calculating the tons of impeded limestone and then determines the net present value of the impeded limestone, over the mine life. *See generally*, June Report, ECF No. 253-2.

Both analyses used the same types of inputs, including the tons of limestone available for mining pre-pipeline and post-pipeline, (the delta of which is the tons of impeded limestone), the selling price and cost per ton, the output in tons per year, and the life of the mine.

Both experts used those inputs to calculate the net present value of the limestone impeded by the Pipeline. The Court fails to see a difference, let alone a flaw, in the June Report's methodology. This argument is therefore unpersuasive.

Second, SSI argues that Hutwelker's testimony should have been excluded on the grounds that his rebuttal report ("August Report") states new or additional opinions, compared to the June Report. Objs. 20–21, ECF No. 344.

Under the Federal Rules of Civil Procedure, a rebuttal expert's opinions must be "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). "The purpose of rebuttal reports is not to advance new arguments or new evidence outside the scope of the opposing expert's testimony [or report]." *Sinomax USA, Inc. v. Am. Signature, Inc.*, No. 2:21-cv-03925, 2022 WL 7180339, at *2 (S.D. Ohio Sept. 30, 2022) (cleaned up).

While the Court agrees that the August Report offers new opinions that contradict the June Report, these opinions are within the scope of rebutting the Lewis Report. The August Report opines that based on market data, the price of limestone will decrease to $8.70 per ton in five years. August Report 5, ECF No. 253-3. This is based on Hutwelker's opinion that SSI had been receiving atypical, higher prices based on a boom in the Marcellus Shale region, similar to what he saw occur in Eastern Pennsylvania. *Id.* This opinion directly contradicts the Lewis Report, which assumes that SSI's then-current price per ton, $13.64, is indicative of future pricing.[5] Lewis Report, ECF No. 253-1, PAGEID # 4106.

---

[5] The price drop opinion in the August Report is also inconsistent with the June Report, which opines that SSI's average price per ton, $13.40, is "similar to current pricing obtained from limestone aggregate suppliers in the area[,]" and likewise assumes that

Case No. 2:17-cv-70                                                                 Page 8 of 11

SSI challenges a number of other opinions in the August Report. Objections 17, ECF No. 344 (for example, explaining that the life of the mine and economical reserve depth are drastically lower in the August Report, as compared to the June Report). These opinions are largely based on the new price drop opinion. *See, e.g.*, August Report, ECF No. 253-3 (opining that 10 feet is "the maximum depth of [overburden] that can be removed . . . while maintaining production costs at a level where sales and *pricing* support an acceptable profit" (emphasis added)). In sum, because the August Report's new opinions respond to the Lewis Report, the August Report is a proper rebuttal.

For these reasons, SSI's objections to the Commission's failure to exclude Hutwelker's testimony are **OVERRULED**.

### 2. Reliability of Lewis's Data

Finally, SSI makes a hodgepodge of arguments going towards why the Commission should have relied on Lewis's opinions and attacking the credibility of Hutwelker's opinions. SSI argues, *inter alia*, that the Commission should have credited SSI's valuation expert because he relied on site specific data rather than market data, that the Commission should have made a finding on the economically recoverable reserve depth and the tons of limestone impeded by the pipeline, and that the Commission should not have questioned SSI's forecasted equipment costs and output. Objs. 14–22, ECF No. 344.

---

price is indicative of future pricing. June Report 8, 12, ECF No. 253-2. But this goes to credibility, not admissibility.

The Court has conducted a thorough *de novo* review of the valuation evidence with respect to each objection and ultimately agrees with the Commission's finding that SSI failed to prove damages capable of reasonably precise calculation. The problem with arriving at a reasonable calculation in this case is that it requires projection decades into the future, because the leased area is so vast, and much of the impeded area is far from the existing mining operation. *See* Lewis Report, ECF No. 253-1, PAGEID # 4102 (using a 33-year mine life); *see also* June Report 12, ECF No. 253-2 (using a 61-year mine life). For example, although Hutwelker's opinion that the price of limestone will drop in exactly five years is too speculative to base a valuation on, so too is an opinion that the price will remain constant through the year 2049. *See Rockies Exp. Pipeline LLC v. 4.895 Acres of Land, More or Less*, 734 F.3d 424, 430 (6th Cir. 2013) ("[T]he primary limit Ohio law places on damages in condemnation matters is that they be neither speculative nor contingent." (cleaned up)). Rather than narrowing its theory of the case to the damages SSI could prove beyond mere speculation—for example, limiting damages to the impeded limestone closer to being mined in both physical distance and time—SSI has taken an all or nothing approach. Based on the evidence presented, the Court agrees that SSI has failed to prove an amount of damages with reasonable certainty, and SSI's remaining objections are therefore **OVERRULED**.

## IV. CONCLUSION

Accordingly, the R&R is **ADOPTED**. Columbia Gas is **ORDERED** to file a notice by **June 28, 2024**, outlining any remaining matters that need to be addressed before the Court closes this case.

The Clerk shall terminate ECF No. 343.

**IT IS SO ORDERED.**

MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT